IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **MIGUEL MONTELONGO**, individually and on behalf of all others similarly situated**,** <br><br> Plaintiff, <br><br> v. <br><br> **WASTE MANAGEMENT, INC.,** a Delaware Corporation, **WASTE MANAGEMENT OF ILLINOIS, INC.**, a Delaware Corporation, **WASTE MANAGEMENT OF ILLINOIS HOLDINGS, LLC**, a Delaware limited liability company, and John Doe Corporations I-C**,** <br><br> Defendants. | Case No. 21-cv-3434 <br><br> Honorable Judge Franklin U. Valderrama |

## MEMORANDUM IN SUPPORT OF PARTIES' JOINT MOTION FOR APPROVAL OF FAIR LABOR STANDARDS ACT SETTLEMENT

**I.     Introduction**

Named Plaintiff Miguel Montelongo, on behalf of himself and all others similarly situated ("Montelongo" or "Named Plaintiff"), and Waste Management of Illinois, Inc. ("WM of IL") (collectively "the Parties"), have reached a settlement in this lawsuit. The Settlement was the result of arm's-length negotiations, conducted by experienced counsel for all Parties, after exchanging extensive data and information, including payroll, computer, and timekeeping records, and after participating in a day-long, in-person mediation with an experienced wage and hour mediator. The terms of the Settlement are reasonable, appropriate, and fair to all Parties, including the Settlement Collective Members.

After approval, all collective members will receive a Settlement Check issued by an Administrator in exchange for a limited release of all the claims they have in the case for unpaid overtime wages and other compensation under the Fair Labor Standards Act and the analogous

Illinois law and arising out of their work as a Dispatcher, Router, or Dispatcher/Router ("Dispatcher") for WM of IL between June 25, 2018 and the date of Approval.

For the reasons explained below, the Parties' Settlement is a fair and reasonable resolution of a *bona fide* dispute between the Parties. As a result, the Parties respectfully request the Court approve the Settlement Agreement (herein "Agreement"), attached hereto as **Exhibit 1**.

## II.     Facts and Summary of Negotiations

WM of IL is a full-service solid waste company providing waste collection, recycling, and disposal services to commercial, industrial, and residential customers across Illinois. Plaintiff and the Settlement Collective Members are all current or former WM of IL Dispatchers. Dispatchers are non-exempt, hourly paid employees responsible for several tasks, including: (i) communicating with Company waste or recycling collection Drivers to route them and help resolve problems on their residential, commercial, and roll-off routes; (ii) handling incoming service orders and resolving service issues; (iii) assisting customers with their requests; and (iv) preparing routes for the next day. Plaintiff seeks to represent a putative FLSA Collective of approximately 78 other WM of IL Dispatchers.

Plaintiff alleged in this litigation that WM of IL violated the Fair Labor Standards Act, 29 U.S.C.§§201, et seq. ("FLSA") by failing to pay minimum wage and overtime to him and the Settlement Collective Members for time spent booting up their computers prior to clocking-in and booting down after clocking-out and other off-the-clock time, such as meal break time worked, as well as unpaid expenses for internet and equipment costs. They also allege claims for failure to include certain bonuses in the regular rate of pay under the Illinois law and the FLSA.

Shortly after Montelongo filed his Complaint, Counsel for both sides began to discuss resolution of the matter. The parties ultimately agreed to attempt to resolve the matter via mediation before an experienced wage and hour mediator. As the discussions progressed, the

Parties agreed to move the Court to stay the Litigation pending the Parties' mediation. The Court entered its first stay of this case on August 14, 2021.

In further agreeing to stay the Litigation in favor of pursuing mediation, and to prepare for that mediation, the Parties engaged in extensive informal discovery. WM of IL produced gigabytes of data and Electronically Stored Information ("ESI") about the collective, their hours worked and their compensation, including policy documents, personnel records, payroll data, timekeeping records, detailed job and work information and work computer information on each class member, as well as information about the Company and its worksites and operations.

WM of IL also produced further data to Plaintiff regarding his claims of failure to reimburse business expenses and failure to include certain bonuses in the regular rate, which consisted of the raw payroll data demonstrating that these bonuses were included in the regular rate as well as research done by WM of IL regarding the reimbursement of internet costs for Dispatchers to conduct their job duties remotely.

In sum, WM of IL produced substantial payroll and timekeeping data which it believes demonstrated: (i) that Dispatchers were paid for their computer boot-up and down time; (ii) that little to no work was performed during Dispatcher meal breaks; and (iii) that Dispatchers were paid for all other work time. The Company also produced information and records demonstrating that Dispatchers were reimbursed for reasonable and necessary business expenses associated with remote work since the COVID-19 Pandemic, such as the costs of home internet. Plaintiff continued to insist otherwise and produced some personal information to support his claims.

As discussions progressed and data and information were shared, the Parties agreed to limit the scope of Montelongo's nationwide class to only those Dispatchers located within the State of Illinois. Further, the Parties acknowledged that the matter, limited to Illinois Dispatchers should

be resolved because continuing to litigate these issues would prolong litigation, consume a significant amount of time, and generate a large amount of additional expenses. As a result, the process culminated in an all-day, in- person mediation session in Nashville, Tennessee with experienced wage and hour mediator Michael Russell, Esq., on April 15, 2022, which resulted in the Settlement. **Exhibit 1**.

The Parties now present the Settlement to the Court for Final Approval. The Settlement offers significant advantages over the continued prosecution of this case: Plaintiff and the Settlement Collective Members will receive significant financial compensation within weeks of the Final Approval Order's entry, and each Settlement Collective Member maintains the right to determine whether or not to accept the payment and cash or deposit his/her Settlement Check, thereby releasing their claims for unpaid overtime and other compensation against WM of IL and its subsidiary, affiliated, and successor companies, or to forego the payment and maintain the right to pursue individual litigation on their own. The Parties agree that the terms of the proposed Settlement, summarized below, are fair and reasonable and should be approved by this Court.

Beyond the resolution of the claims as to the Settlement Collective Members, the Settlement also resolves all of Plaintiff's individual claims against Defendant and its related entities. Specifically, this settlement also resolves Plaintiff's individual claims before the Equal Opportunity Employment Commission ("EEOC") for disability discrimination and retaliation against Defendant as well as claims in a lawsuit entitled *In re Waste Management Data Breach Litigation*, Case No. 21-CV-06199 pending in the United States District Court for the Southern District of New York where he serves as a named plaintiff. Because Plaintiff has viable claims against Defendant and its related entities in separate litigation, the Parties specifically negotiated an increased Service and General Release Award for Plaintiff in exchange for a complete and

4

general release of all claims, including an agreement to withdraw his current EEOC Charge and a withdrawal of his claims alleged in the *In re Waste Management Data Breach Litigation*.

### III. The Settlement

#### A. Summary of the Agreement

Under the Settlement Agreement and subject to approval by this Court, the Parties seek to certify a collective action for settlement purposes under the FLSA and send notice to all persons who worked as a Dispatcher for WM of IL during the period three years prior to the filing of his Complaint, from June 25, 2018, to the date of approval of the Settlement; pay settlement awards to all Settlement Collective Member who opt to join this lawsuit; provide releases in favor of WM of IL limited to claims raised or that follow directly from the allegations raised in this case; allow Plaintiff's counsel to seek approval of attorneys' fees and costs up to an agreed limit; and allow Plaintiff to seek the award that compensates him for his service in aiding Plaintiff's counsel in the investigation, prosecution, and negotiation of the claims raised in the Settlement Agreement, as well as compensation for dismissal of Plaintiff's various other claims against WM of IL and its related Waste Management entities.

#### B. Certification for Settlement Purposes

The Parties ask the Court to certify, for settlement purposes only, a collective action pursuant to Section 216(b) of the FLSA. The group who would be provided notice and an opportunity to join this lawsuit and participate in the Settlement is composed of:

> The Named Plaintiff, and all individuals who performed work as a Dispatcher, Router, or Dispatcher/Router in Illinois and performed such work in one or more workweeks between June 25, 2018, and the date of the Order Granting Final Approval of the Settlement. There are approximately 78 Eligible Settlement Collective Members, and inclusion of all Eligible Settlement Collective Members is a material term of this Settlement.

The certification of a collective action under the FLSA for settlement purposes would allow the Parties to send a Court-approved Notice Packet to all of the Settlement Collective. (The Notice Packet is Exhibit A to the Settlement Agreement). Along with the Court-approved Notice, all Settlement Collective Members will receive a check they can endorse and cash to join the settlement. The Notice Packet explains that by signing and cashing the check, the individual is agreeing to join the Lawsuit as an Opt-In Plaintiff and participate in the settlement. As the Parties explain in more detail below, there are no due process concerns because under the opt-in FLSA settlement process, only those individuals who voluntarily agree to join the lawsuit and cash the check would be bound by the Settlement. If a Collective Member chooses not to join this lawsuit and not cash their settlement check, then that individual loses no rights and is free to pursue their individual claim, if desired, as they see fit. Unlike a class action, where there are absent class members and a class member may lose rights unless they opt-out, in a collective action settlement such as this one, individuals forfeit no rights unless they voluntarily choose to be part of the lawsuit and cash the check.

  C. <u>Amount of the Settlement</u>

    1. *Amount of Fund and Individual Awards*

WM of IL has agreed to create a fund of Two Hundred Twenty-Seven Thousand Five Hundred Dollars ($227,500.00) (defined in the Settlement Agreement as the "Gross Settlement Amount"). Out of the Gross Settlement Amount, WM of IL agrees to pay **all** Settlement Collective Members monies to compensate them for all allegedly owed but unpaid wages, including overtime, all owed expense reimbursements, all compensation for the alleged failure to include certain bonuses in the regular rate of pay, and penalties; the Service and General Release Award to the Plaintiff; attorneys' fees; costs and expenses, excluding all costs and expenses of administration; all settlement consideration; and all resulting employee and employer paid withholding and payroll

taxes (including, but not limited to, all state and federal income taxes, social security contributions, and unemployment taxes).

To calculate each Settlement Collective Member's share of the Settlement, the Parties will first calculate the Net Member Payments by subtracting from the Gross Settlement Amount the following amounts: (i) 33.3% of the Maximum Settlement Amount for attorneys' fees, which equals $75,833.33; (ii) $8,321.79 in attorneys' costs for prosecuting the claims in this case; and (iii) $50,000.00 as the total of Plaintiff's Service and General Release Award. Each Settlement Collective Member's Net Wage and Liquidated Damages Payments is described in Paragraph 32 of the Settlement Agreement and includes a Minimum Payment to each Collective Member and payments based on a pro rata share of Qualifying Workweeks that Collective Members collectively worked as a Dispatcher during the Collective Period. Qualifying Workweeks is defined in the Settlement Agreement as the number of workweeks that Collective Member both: (i) worked as a Dispatcher; and (ii) performed any work as a Dispatcher during the workweek.

Each Settlement Collective Member will be advised in a Notice Packet and accompanying check, which they will receive via U.S. Mail, of the amount of their settlement payment and of the terms of the Settlement Agreement. Each Collective Member can then decide whether to voluntarily join the Settlement and cash the check. Collective Members release claims only if they decide to voluntarily join the Settlement and cash the check. Any portion of the settlement payment that is not claimed by the Members will be returned by the Administrator to WM of IL.

    2.    *Attorneys' fees, costs, and the Service and General Release Award*

In addition to the money that is allocated to pay Settlement Collective Members, WM of IL does not oppose Plaintiff' request for an award of attorneys' fees and reimbursement of expenses up to a maximum of $75,833.33, plus $8,321.79 in costs. WM of IL does not oppose Plaintiff' Counsel's request for approval of a Service and General Release Award totaling

7

$50,000.00 for the Plaintiff as described in the Settlement Agreement and in more detail below. This Service and General Release Award is given for more than just a recognition of his efforts on behalf of the Settlement Collective Members. It is also given in exchange for a general release of claims as to WM of IL, as well as any and all claims brought before the EEOC, which Plaintiff agrees to withdraw upon the Effective Date of the Settlement, and a release of claims brought in the lawsuit entitled *In re Waste Management Data Breach Litigation*, Case No. 21-CV-06199 pending in the United States District Court for the Southern District of New York. Thus, Plaintiff's Service and General Release Award in this case differs from more traditional Service Awards given the breadth upon which the release covers.

      3.     *Releases*

If the Agreement is approved, all Settlement Collective Members who voluntarily choose to accept this Settlement by timely signing, cashing, or depositing their Settlement Check will release all claims that relate to the alleged failure to pay all regular and overtime compensation for all hours worked, all claims that relate to alleged failure to reimburse for reasonable and necessary business expenses under Illinois state law, and all claims for alleged failure to include certain bonuses in the regular rate of pay, including claims under the FLSA and applicable state wage and hour laws or common laws. As explained above, because this is a settlement agreement under the FLSA, and the Parties are not asking for a settlement under Rule 23 of the Federal Rules, there are no absent class members. Consequently, any Collective Member who does not wish to participate, and therefore does not sign, cash, or deposit their check, will not release any claims, and will not be bound by the Agreement.

Moreover, as described above, the Plaintiff, Miguel Montelongo, will receive a Service and General Release Award in exchange for his broader general release of all his individual claims against WM of IL and all of its related entities, as detailed in the Agreement.

**IV.**     **Argument**

      **A.**     <u>A One-Step Approval Process for FLSA Settlements Is Standard</u>

Pursuant to the FLSA, claims for back wages and other damages arising under the FLSA may be settled or compromised with the approval of the District Court or Secretary of Labor. *See Brooklyn Savings Bank v. O'Neil,* 324 U.S. 67 (1945); *D.A. Schulte, Inc. v. Gangi,* 328 U.S. 108 (1946); *see also Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353-54 (11th Cir. 1982). Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. *See Furman v. At Home Stores LLC,* No. 16-cv-8190, 2017 WL 1730995, at *1 (N.D. Ill. May 1, 2017).

In the Seventh Circuit and throughout the country, a one-step approval process is appropriate in FLSA opt-in settlements that do not include Rule 23 opt-out classes. *See, e.g., Prena v. BMO Fin. Corp.*, No. 15-C-09175, 2015 WL 2344949, at *1 (N.D. Ill. May 15, 2015) ("One step is appropriate because this is an FLSA collective action, where collective members must affirmatively opt-in, in order to be bound by the settlement (including the settlement's release provision)."); *Roberts v. Apple Sauce, Inc.*, No. 3:12-CV-830-TLS, 2014 WL 4804252 (N.D. Ind. Sept. 25, 2014); *see also Bozak v. FedEx Ground Package Sys., Inc.*, No. 3:11-cv-00738-RNC, 2014 WL 3778211, at *9-10 (D. Conn. July 31, 2014) (approving FLSA notice providing notice of settlement terms and options facing class), 2014 U.S. Dist. LEXIS 106042 (D. Conn. July 31, 2014).

**V.**     **This Court Should Grant the Motion and Find the Agreement Fair and Reasonable**

      **A.**     <u>The Agreement Is Fair and Reasonable and Should Be Approved</u>

The Court should approve the Settlement Agreement because it is fair and reasonable. To approve the Settlement, the Court should determine that the proposed settlement reflects a reasonable compromise over contested issues. *Furman v. At Home Stores LLC, No. 16-cv-8190,*

9

2017 WL 1730995, at *1 (N.D. Ill. May 1, 2017). Courts approve wage and hour settlements reached as a result of contested litigation to resolve *bona fide* disputes. *See, e.g., Lynn's Food Stores*, 679 F.2d at 1355; *Koszyk v. Country Fin. a/k/a CC Servs., Inc.*, No. 16 Civ. 3571, 2016 WL 5109196, at *1 (N.D. Ill. Sept. 16, 2016). If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Lynn's Food Stores*, 679 F.2d at 1354.

Here, the settlement was negotiated at arm's-length by experienced counsel; the amount WM of IL has agreed to pay the Settlement Collective Members is fair and adequate; there is a significant risk to the Collective of an adverse judgment on the merits or whether the case should proceed as a collective action because of binding arbitration agreements; the Collective will receive adequate notice sufficient for each potential opt-in to assess their rights; the members of the Collective are sufficiently similar for *final* certification for settlement purposes; and the amount of fees, costs and incentive payments requested are in line with sums previously awarded in similar cases. This settlement is particularly fair and reasonable because, unlike a class action settlement, only those individuals who voluntarily choose to become part of the lawsuit, and thus to participate in the settlement, are bound by it. As the parties explain more fully below, any potential class member who thinks the settlement is unfair is not obligated to participate in the settlement and is not bound by it.

      B.    <u>Settlement is the Product of Arm's Length Negotiations of a Bona Fide Dispute</u>

The settlement in this case is the result of arm's-length negotiations, involving the exchange of class/collective discovery and extensive settlement discussions between counsel for the Parties. Additionally, Plaintiff recognizes the expense and length of the proceedings necessary to continue the litigation against Defendant through trial and through any possible appeals. Plaintiff has also considered the uncertainty and risk of the outcome of further litigation, the defenses raised by

Defendant, and the difficulties and delays inherent in litigation.

Plaintiff's Counsel reviewed and analyzed the payroll information produced by WM of IL, including detailed information on the calculation of bonuses into Dispatcher's regular rate of pay, as well as detailed information regarding the Company's expense reimbursement policies and procedures and whether they comport with Illinois law. Plaintiff's Counsel has considerable experience in litigation of class and collective actions, including wage and hour, and determined as a result of their analysis of all the data and policy information that WM of IL has substantial and viable defenses to all of Plaintiff's claims as well as a substantial chance of success on a collective certification motion. Therefore, Plaintiff's Counsel believes that there is significant uncertainty and risk in continuing the litigation. Thus, Counsel has determined that the monetary terms of each Plaintiff's respective settlement are fair, adequate and reasonable, and in the best interests of each Plaintiff. Not only is the settlement the product of an adversarial, non-collusive process, but the amount to be paid to the Plaintiff Class is fair and reasonable.

        C.      <u>The Amount to the Class is Fair</u>

Not only is the settlement the product of an adversarial, non-collusive process, but the amount to be paid to the Collective is fair and reasonable. First, all Settlement Collective Members will receive a minimum payment of $100.00. Second, the average Settlement Check amount is $1,196.79. Thus, the vast majority of the Collective Members will receive more than $1,000.00 for their release of claims that were pled or could have been pled in this case. Some Members would receive substantially more if they worked most or all of the Collective Period. Third, the amount going to each Collective Member was determined by applying a Minimum Payment and then applying a formula that took into consideration the work weeks of each Dispatcher during the Collective Period. A Dispatcher who worked more weeks during this period was allocated a proportionally higher share of the settlement than one who worked fewer work weeks during the

11

period.

These distribution methods are fully detailed in the Settlement Agreement and in the Notice Packet that will be sent to each Settlement Collective Member. Finally, only those who voluntarily agree to join the settlement and cash the check would be bound by it. As stated in the Notice, any Dispatcher who has questions about the settlement may contact Plaintiffs' counsel. More importantly, any Dispatcher who disagrees with the allocation or with any of the terms of the Settlement Agreement does not have to join the settlement, in which case they would not give up any rights, including not releasing any claims.

D. Due Process Considerations

Section 216(b) collective actions such as this do not implicate the same due process concerns as Rule 23 class actions because they require workers to voluntarily opt-in to the litigation. *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 771 (7th Cir. 2013); *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 74 (2013) ("Rule 23 actions are fundamentally different from collective actions under the FLSA."). Under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date." *McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984), *abrogated on other grounds by Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989). Accordingly, courts do not apply the exacting standards for approval of a class action settlement under Rule 23 to FLSA settlements. *See, e.g., Woods v. N.Y. Life Ins. Co.*, 686 F.2d 578, 579-80 (7th Cir. 1982) (stating that due process concerns present in Rule 23 class actions are not present in FLSA collective actions). There is no need to require that the settlement provide for opt-outs or objections where individuals are not part of the settlement unless they decide to participate. *Prena*, 2015 WL 2344949 at *1; *Woods*, 686 F.2d at 580.

In this case, each Settlement Collective Member only has to timely sign and cash the check

12

enclosed in the Notice Packet. And only if they independently decide to cash the check will they be bound by the settlement. Any individual who chooses not to cash the Settlement Check is not bound in any way by the settlement or any release. That significant difference from a class action settlement weigh in favor of final approval since the individual class members will have the opportunity to make an informed decision about whether to join the settlement and will not be bound by it unless they affirmatively choose to do so.

> E. The Service and General Release Award to Named Plaintiff Should Be Approved as Fair and Reasonable

In general, courts may make separate awards to class representatives in recognition of their risks taken, time expended, and benefits to the class. *See Espenscheid v. Direct Sat USA, LLC*, 688 F.3d 872, 876-77 (7th Cir. 2012). Named plaintiffs in class and collective lawsuits play a crucial role in bringing justice to those who would otherwise be hidden from judicial scrutiny. "Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). However, while service awards in class action lawsuits compensate the named plaintiff for their time and effort in assisting in the prosecution of the case, the instant action revealed that not only did Named Plaintiff deserve a service award for that reason, but also, the Parties contemplated the Named Plaintiff's ongoing litigation with Defendant and its related entities during the Parties mediation session. Therefore, the Parties request that this Court approve the Service and General Release Award of $50,000.00 to the Named Plaintiff.

The Parties arms-length negotiations revealed that the Plaintiff, Montelongo, not only serves as the Named Plaintiff in this instant action but also had previously filed a Charge with the EEOC and continues to serve as a Plaintiff in another action pending in the United States District Court for the Southern District of New York entitled *In re Waste Management Data Breach*

*Litigation*, Case No. 21-cv-06199. Specifically, Plaintiff maintains a colorable claim for disability discrimination and retaliation with the EEOC and, should the EEOC provide him with a Right-to-Sue letter, he could continue those claims in federal district court. Plaintiff also continues to serve as one of several named plaintiffs in the *In re Waste Management Data Breach Litigation* and he still maintains colorable claims in that case. In the interest of disposing of all claims made by Named Plaintiff against Defendant and its related entities, the Parties bargained for an enhanced Service and General Release Award. Consideration in exchange for Plaintiff's release of the claims brought in his EEOC charge and the Data Breach litigation represents the substantial majority of Plaintiff's Service and General Release Award.

The remaining portion of Plaintiff's Service and General Release Award consists of the time and effort Plaintiff expended in assisting the prosecution of this litigation, which include the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by Plaintiff. *See, e.g., Espenscheid,* 688 F.3d at 876-77; *Cook,* 142 F.3d at 1016. Named Plaintiff's role in this litigation was crucial. Plaintiff sacrificed his time to prosecute this lawsuit on behalf of fellow current and former Dispatchers, which included numerous communications with counsel, detailed review of documents and information relating to the claims in this case, and travel and participation in a full-day in-person mediation session in Nashville, TN. Therefore, a separate Service and General Release Award of $50,000 to Plaintiff is warranted. *See Briggs v. PNC Fin. Servs. Grp., Inc.*, No. 1:15-CV-10447, 2016 WL 7018566, at *3 (N.D. Ill. Nov. 29, 2016) (order approving service awards of $12,500 each to named plaintiff); *Koszyk,* 2016 WL 5109196 at *2 (order approving service awards of $10,000 each to named plaintiff); *Castillo v. Noodles & Co.*, No. 16-CV-03036, 2016 WL 7451626, at *2 (N.D. Ill. Dec. 23, 2016) (same).

F. <u>Attorneys' Fees and Costs Should Be Approved As Fair And Reasonable</u>

The norm in the Seventh Circuit is to use the percentage of the fund method in common

fund cases like this one. *See Wong v. Accretive Health, Inc.*, 773 F.3d 859, 862 (7th Cir. 2014); *In re Synthroid Mktg. Litig.*, 325 F.3d 974, 979-80 (7th Cir. 2003) (preferring the percentage of fund approach because "if class counsel invested too many hours, dallied when preparing the settlement, or otherwise ran the meter, the loss falls on counsel themselves"); *Campbell v. Advantage Sales & Mktg. LLC*, No. 09 Civ. 1430, 2012 WL 1424417, at *2 (S.D. Ind. Apr. 24, 2012) (using percentage of the fund approach in FLSA settlement). Whereas "[t]he lodestar create[s] an unanticipated disincentive to early settlements," (*Carlson v. Xerox Corp.*, 596 F.Supp.3d 400, 405 (D. Conn. 2009)), "[a]warding attorney's fees through a percentage of common fund is consistent with the need to incentivize lawyers to resolve cases early and to avoid over-litigating them in order to recover a large fee." *McCue v. MB Fin., Inc.*, No. 15-cv-988, 2015 WL 4522564, at *3 (N.D. Ill. July 23, 2015); *see also Martin v. Dun & Bradstreet, Inc.*, No. 1:12-cv-215, 2014 WL 9913504, at *1 (N.D. Ill. Jan. 16, 2014). Under the percentage of fund analysis, "courts can expect attorneys to make cost-efficient decisions about whether certain expenses are worth the win." *Gaskill v. Gordon*, 942 F. Supp. 382, 386 (N.D. Ill. 1996). Likewise, the percentage of fund method conserves judicial resources. *See Hensley v. Eckhart*, 461 U.S. 424, 437 (1983) (fee requests "should not result in a second major litigation").

Here, the Settlement Agreement contemplates Plaintiff's attorneys' fees being paid as one-third of the total settlement amount. Courts in the Northern District of Illinois routinely approve one-third of the settlement fund as attorneys' fees in FLSA wage and hour settlements. *See, e.g., Castillo*, 2016 WL 7451626, at *3-4 (awarding one-third of a $3,000,000 settled fund in FLSA overtime action); *Furman*, 2017 WL 1730995, at *3-4 (awarding one-third of a $990,000 settlement in FLSA overtime action); *Briggs*, 2016 WL 5109196, at *3-4 (awarding one-third of $2,825,000 settlement fund in FLSA overtime case); *Zolkos*, 2012 WL 4275540, at

15

*3 (awarding one-third of $3,350,000 settlement in FLSA claim); *Day*, 2018 WL 24673472, at *2-3 (awarding one-third of $900,000 settlement in FLSA matter).

In awarding attorneys' fees, courts ultimately "must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and normal rate of compensation in the market at the time." *Castillo*, 2016 WL 7451626, at *4 (citing *id*.). District courts must "undertake an analysis of the terms to which private plaintiffs and their attorneys contracted at the outset of litigation when the risk of loss still existed." *Sutton v. Bernard*, 504 F.3d 688, 692 (7th Cir. 2007). They must "do their best to recreate the market by considering factors such as actual fee contracts that were privately negotiated for similar litigation, [and] information from other cases…" *Taubenfeld v. AON Corp.*, 415 F.3d 597, 599 (7th Cir. 2005). Moreover, "Courts within this District have also recognized that a fee award of 33 1/3% is in fact in 'line with that which has, in previous cases, been approved…" *Steele v. GE Bank*, No. 1:08-cv-1880, 2011 WL 13266250, at *6 (N.D. Ill. May 17, 2011); *see also* 4 Robert Newberg, *Newberg on Class Action* § 14.6 (4th ed.2002) ("[F]ee awards in class actions average one-third of the recovery[.]"),

Here, the request for one-third of the settlement amount is reasonable. The competence of Plaintiff's Counsel led to an efficient resolution which created a substantial benefit to the class. *See Day*, 2018 WL 2473472, at * 2 (finding one-third award of $900,000 is appropriate because Plaintiff's counsel accomplished "early resolution of the case without wasteful litigation to increase lodestar hours."). The above decisions in *Castillo*, *Furman*,*Briggs*, *Zolkos*, and *Day* comport with the Seventh Circuit's instruction on market price application to percentage of fund awards in *In re Synthroid Mktg. Litig.*

Second, the substantial benefit conferred upon the Class justifies the fee award. The settlement provides significant value to those who elect to participate. At the same time, it offers

16

individuals who do not wish to release their claims the ability to pursue their claims elsewhere. *See Ramah v. Navajo Chapter v. Babbitt*, 50 F.Supp.2d 1091, 1103-04 (D.N.M. 1999) (absence of overly broad release supports fee award). As detailed above, the average amount that an individual will receive is $1,196.79.

Third, the early resolution obtained means Collective Members are not required to wait for years before receiving payment. *See Hernandez v. Merrill Lynch & Co., Inc.*, No. 11 Civ. 8472, 2012 WL 5862749, at * 2 (S.D.N.Y. 2012) (endorsing early settlement of wage and hour class actions); *see also Day*, 2018 WL 247342, at *2 (encouraging early resolution to avoid "wasteful litigation").

Fourth, the risk of non-payment was substantial. In pursing this claim, Plaintiff's Counsel took "on a significant degree of risk of nonpayment" in agreeing to represent Plaintiff and similarly situated employees. *Taubenfeld*, 415 F.3d at 600 (approving district court's reliance on this factor in evaluating attorney's fees). Plaintiff's Counsel represented Plaintiff on a contingency fee basis with a strong risk that they would receive no fee. *See Sutton*, 504 F.3d 688, 693-94 ("there is generally some degree of risk that attorneys will receive no fee (or at least not the fee that reflects their efforts when representing a class because their fee is linked to the success of the suit."); *see also Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 570 (stating Plaintiff's Counsel "could have lost [and could still lose] everything invested").

Fifth, the contingency fee agreement entered into between Plaintiff and Plaintiff's Counsel for one-third justifies the request; *Silverman v. Motorola Solutions, Inc.*, 739 F.3d 956, 958 (7th Cir. 2013) (noting that *ex ante* agreements better approximate the prevailing market rate between willing buyers and sellers of legal services).

Lastly, the Settlement Agreement calls for $8,321.79 in costs advanced to be reimbursed. This amount is modest, particularly in relation to the total amount of the Settlement. Moreover, the vast majority of the costs to be reimbursed resulted from the private mediation. Without that private mediation, the parties would most likely have no Settlement.

## VI. Conclusion

The Parties have agreed to settle all claims in this dispute through execution of the Settlement Agreement. (*See* Exhibit A). While WM of IL does not admit liability or wrongdoing, all Parties agree and represent that, in accordance with the terms of the Settlement Agreement, Plaintiff are receiving a reasonable and satisfactory recovery. Thus, the Parties respectfully request that the Court approve the Settlement and issue an Order dismissing this action with prejudice and directing the entry of final judgment.

| Respectfully Submitted, | Respectfully Submitted, |
|---|---|
| **MIGUEL MONTELONGO** | **WASTE MANAGEMENT OF ILLINOIS, INC.** |
| By: */s/ Michael Fradin (w/consent)*<br>His Attorney | By: */s/Matthew J. Ruza*<br>One of Its Attorneys |
| Michael L. Fradin<br>**Fradin Law**<br>8401 Crawford Ave. Suite 104<br>Skokie, IL 60076<br>847-986-5889<br>847-673-1228<br>mike@fradinlaw.com | John A. Ybarra<br>Matthew J. Ruza<br>**LITTLER MENDELSON, P.C.**<br>321 N. Clark Street, Suite 1100<br>Chicago, IL 60654<br>(312) 795-3208<br>jybarra@littler.com<br>mruza@littler.com |

Dated: June 9, 2022

18

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that, on June 9, 2022, he caused a copy of the foregoing ***Memorandum in Support of Parties' Joint Motion for Approval of Fair Labor Standards Act Settlement*** to be filed electronically with the Clerk of the Court using the Court's CM/ECF system, and notification of such filing was sent to all Filing Users.

/s/ Matthew J. Ruza
Matthew J. Ruza

4863-5531-7793.7 / 046554-1448